CONSOLIDATED GAS CO. OF NEW YORK v. NEWTON, Atty. Gen. of State of New York, et al.

(District Court, S. D. New York. February 28, 1921.)

No. 791.

1. **Gas ⊂⊃14(1)—Decree impounding part of rate collected until fixed by state authority held not to require that power be given to Public Service Commission to fix rate retroactively.**

   A decree limiting the rate to be charged by a gas company, and impounding a certain part of the money collected, to be later distributed according to a rate eventually determined by authority of the state, does not require that the power given to the Public Service Commission extend to fixing a rate to be effective retroactively.

2. **Gas ⊂⊃14(1)—Motion to extend time fixed by decree limiting rate to be charged for gas denied.**

   Where the elements of cost production of gas are disputed, and no evidence is present, except affidavits concerning the cost, a definite rate will not be set, and the limitation of the rate by a former decree, which impounded a portion of the money to be distributed according to the findings of the Public Service Commission, to be effective until March 1, 1921, will not be extended.

3. **Gas ⊂⊃14(1)—Time fixed by decree for impounding part of charges collected, to be distributed according to rate to be fixed by Public Service Commission, extended.**

   Where a new rate for gas will not be fixed by the Public Service Commission until after decision on appeal from a decree impounding a part of the charges collected, to be distributed according to the rate to be fixed by such commission, the time fixed by the decree for impounding will be extended for three months after the determination of the appeal, in order to give the Public Service Commission time to set a new rate.

In Equity. Suit by the Consolidated Gas Company of New York against Charles D. Newton, Attorney General of the State of New York, and others. Application by defendants for an extension of time fixed by decree for turning over to plaintiff the sums impounded. Granted in part; denied in part.

For former decree, see 267 Fed. 231. See, also, 256 Fed. 238; 260 Fed. 244.

Shearman & Sterling, of New York City, for complainant.

Godfrey Goldmark, of New York City, for defendants.

LEARNED HAND, District Judge. In the decrees entered herein (267 Fed. 231) on August 4 and August 11, 1920, I provided that until March 1, 1921, the complainant should be limited to $1.20 in the price it might charge for gas, and that, if before that time a rate should be fixed by competent public authority, the master should distribute the sum deposited in court above 80 cents as though that rate had been in force from the date of the decree, but if no rate had been promulgated that he should turn over the sums impounded to the plaintiff. That period has now expired, and the Legislature of New York has not yet given power to any public authority to fix a rate in excess

of 80 cents, and of course no such rate has been fixed. The defendants, therefore, apply for an extension of the period, either indefinitely or to some stated time, the limit to remain as before, and the provision for distribution in accordance with the new rate to be retained. The plaintiff answers by insisting that the costs of manufacture and distribution have greatly increased in seven months' time, and that if any limit is to be fixed it must be much in excess of $1.20.

Although the state has not yet taken any final action, its authorities have not been idle, for there is pending in the Legislature, acting on the recommendation of the Governor, a bill which, as presented, gives the Public Service Commission power to fix a rate, regardless of existing statutes, and, as printed, summarily to establish a temporary rate, which shall supersede existing rates for a period in the aggregate of not over nine months. It is clear that, unless changed, the commission would under this bill have power at once to deal with the situation here arising. The plaintiff suggests that the provisions for temporary rates in advance of full hearing might be unconstitutional, but, if so, conceivably this possible defect may be remedied by amending the bill; at least I may not assume that this will not be done. For example, when enacted, it may provide that the temporary rate, if a reduction, should merely authorize the commission to impound the difference and make an eventual award in accordance with more deliberate findings. Indeed, such may be the correct interpretation of the commission's powers as the bill stands. As section 72 reads at present, the commission will certainly have power to impound some of the moneys collected for certain purposes which it may order the companies to realize.

[1] As regards this proposed legislation, the assertion was made in argument that the Public Service Commission must be granted power to fix a rate retroactively, if the decree is to stand, and that this has not been proposed. This is a misconception of the meaning of the decree, which required no such powers in the commission. The power assumed in the decree was to impound over a limited period the difference between the statutory rate and what the plaintiff charged, and to distribute it later, accepting the rate eventually fixed as the proper measure of distribution for that period. The commission does not fix the rate, if by that is meant enforcing it in invitum. The court merely accepts it as proper evidence over the period, in distributing the sums collected through the voluntary acceptance by the plaintiff of the benefit of the injunction. That acceptance has always operated in futuro. As showing how mistaken the assumption is, it may be observed that, if the plaintiff had chosen to await the action of the defendants, it would have been free to charge and keep whatever it wished; the statutory rate having in fact become invalid. It was, however, not content with that course, but demanded the extraordinary relief of an injunction to prevent the defendants from moving against it at all. In so doing it subjected itself to all equitable conditions upon that relief, from which it could and can still at any moment be free by vacating the decree. The sole question is whether it is an equitable condition to insist that the court shall distribute the sums collected as nearly as it can in accordance with the long-expressed policy of the state and with

the eventual action of its officials. In pursuance of that purpose, it is not in the least essential that the commission should have power to fix a rate retroactively.

[2] The first question is of an extension of the limit of $1.20. When this was set, all the data were taken from the evidence at the hearing, and the limit was based upon the utmost sum which it could be supposed that the plaintiff could be allowed to charge by the Public Service Commission when it acted. At that time the plaintiff was apparently content with the limit, because on the reargument it challenged only what it mistakenly calls the "retroactive" feature of the decree. Since that time it has had over six months' experience with that limit, and it presents figures which, if true, show that it cannot make a profit of 3 per cent., since its cost of manufacture and distribution have risen to over $1.10. With a possible profit of $.32, and income taxes of $.03, the rate comes to more than $1.45. Indeed, its estimates, based upon the prices obtaining at the end of the period, are somewhat higher. Some of the items, as, for example, the difference between gas produced and gas sold at 10 per cent., are clearly too high; but the difference is not very substantial in result. The defendants, on the other hand, challenge the figures so produced, especially the cost of oil and coal, which account for most of the increase.

The issue, as I have already said, is misconceived. Of course, I cannot at present undertake, especially on affidavits, to decide whether the plaintiff's claims are too high, nor would it be of service if I could. Nothing can be decided as to how much the plaintiff shall eventually retain, but only how much it shall presently collect. In that I should have to be guided substantially by what the plaintiff claims, so long as it makes a prima facie case for its figures. The evidence is not sufficient to make any finding, and this is in any event not the time to do so. Moreover, it has proved impossible to avoid the consequence that the limit, if fixed, shall be supposed to be a rate, and it would be unfortunate to give any color to the supposition that a rate of $1.45 had the approval of a court. Besides, the rights of the public are in any case protected, if the plaintiff must eventually account for all sums collected. Finally, it must be conceded that since my decision there have been several rulings to the contrary, and between us the Supreme Court alone can decide. If I set a limit, and that court eventually decides that I had no such power, the damage will be finally consummated; but, if it holds that I have power to distribute the fund according to the rate, the money will be at hand, and nothing will be lost to consumers, except the temporary use of their money, on which they are being secured their interest. For all these reasons, it appears to me, therefore, best not to extend the limitation beyond the original period.

[3] I think, however, that the period should be extended over which the new rate, when promulgated, should relate back. I may assume that by May 1, 1921, the Legislature will have finally determined what course to take, and whether it deems best to give power to the commission summarily to allow a temporary rate with or without an impounding feature. Hence, if there were no appeal pending I should think that in three months—that is, by August 1, 1921—the plaintiff

ought not to be required any longer to deposit its collections in court. But it is scarcely possible to suppose that any commission would fix a new rate until the appeal from this decree is determined, and therefore it appears to me that the impounding should continue for an adequate season after that, say three months. The sums impounded should, however, be held for a further time, and until the commission has had a chance to come to more than a mere summary conclusion. They should therefore be held until the rate is finally settled by the commission and be then distributed in accordance with that rate, subject to qualifications I shall mention in a moment.

The plaintiff argues that that rate, which may not be fixed for many months after the commission begins its inquiry, will, when fixed, be no index of the proper rate during the period of accumulation. That, of course, may be true. The period may include a "peak" of prices, which would make inadequate a rate proper enough after the "peak" had passed. The answer for the present is that we cannot now tell what the future will show, and that, even though there be such a "peak," it does not follow that the rate, when fixed, ought not to apply over the period. Willcox v. Consolidated Gas Co., 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382, is a direct authority that for limited periods the rate need not insure a sufficient profit, and it would by no means follow that the rate as fixed should not be held applicable throughout the period, despite a "peak." Prima facie I think it ought, unless the plaintiff can show the contrary.

Moreover, while the commission will presumably have no power to make a retroactive rate, it has large powers of investigation, and it may in fact be empowered to make findings as to the proper rate over the period in question, even though it cannot prescribe for it. And even though the findings and rate were not rigidly applicable, it is nearly certain that some of the findings and principles on which the commission will proceed will be of extended application, which could in very substantial part be used by the court in distributing the moneys. Such, for example, might well be the rate of return, the valuation of the "rate base," the propriety of the oil contract, the loss of gas, and many others. Nor, indeed, is it inconceivable that the commission or some properly delegated officer might consent to act as master of the court, if the distribution required an independent inquiry. As I conceive it, the court is free, by any means it can within the limits of equity procedure, to distribute the fund in the closest practicable conformity with the action of the state authorities when made. The court has such latitude as may be necessary to accomplish that result. Some way should be found, I think, to prevent the plaintiff from enjoying a long period during which it may charge any rate it chooses. Certainly that is contrary to the long-standing policy of the state.

The defendants' motion I have therefore disposed of as follows: The motion to fix a limit to the plaintiff's charges after March 1, 1921, is denied; the motion to extend the period for impounding is granted, by extending that period till three months after the appeal is decided, unless the commission before that period expires has put in force a new rate, temporary or final; the moneys so collected the master will dis-

tribute when the commission has finally fixed a rate, and in accordance with that rate, unless the plaintiff successfully shows cause to the contrary. In that case it will be distributed as nearly as possible in conformity with the findings of the commission and the principles on which the new rate has been fixed.

An order in accordance with the foregoing is filed herewith.

⊂=⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes